Nov. 1813.

HORTON
v.
FRINK.

ports the existence of *Howard* at the time of passing it; and, of course, such must have been the case, when the execution was levied.

———

SAMPSON HORTON, JOHN HUNT and STEPHEN SHIPMAN *against* DAVID FRINK.

*A.* assigned to *B.* a promissory note, not negotiable, payable on the 19th of *September*, 1802, at a particular place; the note was duly presented, and payment was refused. On the 11th of *Octo-ber* following, sufficient per-

MOTION for a new trial.

This was an action of *assumpsit.* The defendant pleaded the general issue.

On the trial, it appeared, that on the 10th of *August*, 1802, the defendant, by a blank endorsement, assigned to the plaintiffs a certain promissory note, executed to him, by one *Joshua Raymond*, for the sum of 204 dollars, payable to the defendant, or his order, at the *Union Bank* in *New-London*, sixty days after its date, bearing date the 21st of *July*, 1802; that when the note became payable, it was presented at the bank

sonal property of the maker was attached in a suit on the note, returnable before the *New-London* City Court, on the 1st *Monday* of *November*, 1802 ; the process was seasonably returned to the dwelling-house of the clerk of the court, but by reason of his absence, was not entered in the docket. A second suit was immediately brought, in which, on the 11th of *November*, the personal property of the maker of the note, was attached, by writ returnable to the *New-London* City Court, on the 1st *Monday* of *December*, 1802 ; in which judgment and execution were obtained against the maker ; and the execution, which was dated *December* 6th, 1802, was, on the 28th of *January*, 1803, returned into the office of the clerk of the court, unsatisfied. After the commencement of the last-mentioned suit, and before the time of rendering judgment therein, the maker of the note committed an act of bankruptcy, and regular proceedings were had against him as a bankrupt. One term of the County Court in *New-London* county intervened between the commencement of the second suit and the time of rendering judgment therein. In *assumpsit* by the assignee against the assignor of the note, it was held, that the plaintiff had not used due diligence to collect the contents of the maker, and that, therefore, he was not entitled to a recovery.

for payment, and that payment was refused; that on the 11th of *October*, 1802, the plaintiffs, in the name of the defendant, commenced an action on the note against the maker, by writ of attachment, returnable before the *New-London* City Court, to be holden on the first *Monday* of *November* then next, by which the personal property of *Raymond*, of the value of 400 dollars, was attached; that the writ and process was, by the officer, returned in season, to the dwelling-house of the clerk of the court, but by reason of his absence, was not entered in the docket of the court; that on the 11th day of *November*, 1802, the personal property of the maker, of the value of 400 dollars, was attached, in a second suit on the note, returnable to the *New-London* City Court, held on the first *Monday* of *December*, 1802; when judgment was rendered for the plaintiff in the action, and execution, dated the 6th of *December*, 1802, was issued thereon in legal form; which execution, on the 28th of *January*, 1803, was, by the proper officer, returned into the office of the clerk of the court, wholly unsatisfied.

It appeared, also, that subsequent to the institution of the last-mentioned action, and prior to the rendering of judgment therein, *Raymond* committed an act of bankruptcy within the meaning of the statute of the *United States* relating to bankruptcy, and was duly declared a bankrupt pursuant to the provisions of the statute; of all which the defendant had notice.

It was admitted by the parties, that one of the stated terms of the County Court, for the county of *New-London*, in 1802, commenced on the fourth *Tuesday* of *November*.

The Superior Court, in their charge, instructed the jury, that the plaintiffs had not used due diligence in their attempts to collect the amount of the note of the maker, and that, therefore, they must find their verdict for the defendant. The jury returned their verdict for the defendant accordingly. The plaintiffs moved for a new trial, on the ground of a misdirection; which motion was reserved for the consideration of the nine Judges.

*J. T. Peters,* in support of the motion. It appears from the facts in this case, that the plaintiffs have been guilty of no negligence. The first suit was returnable on the 2d of *November:* The second suit was commenced on the 11th of *November,* and made returnable on the first *Monday* of *December* following, when judgment was obtained, execution issued, and every legal course was pursued to enforce the payment of the debt. No injury was sustained by the defendant, by the delay.

But an act of the law intervened, and rendered it impossible for the plaintiffs to coerce the payment of the money. The property, which was attached, and held to satisfy the judgment, was swept from our hands, by an act of bankruptcy. This was an event, which no one could foresee or control. The defendant, by his endorsement, warranted the solvency of the maker of the note, and ought to sustain the loss.

Want of diligence cannot be imputed to the plaintiffs, on the ground of the failure of the first suit. This question was settled in the case of *Frink* v. *Scovel,* 2 *Day's Rep.* 430. The plaintiffs have done every thing, which they could lawfully do, to enforce payment of this debt. They have given no forbearance to the bankrupt. The note was presented at the bank for payment, when it became due. This alone was sufficient to lay a foundation for the action. The guaranty of the defendant extended to all contingencies, except the negligence of the plaintiffs. It is contended, therefore, that from the facts in the case, no negligence can be imputed to the plaintiffs.

But besides, the question of due diligence, is a question exclusively within the province of the jury. They alone can decide this question; and it ought to have been left to their decision. On this ground the charge was incorrect.

*T. S. Williams* and *Gurley,* contra. The note on which this suit is brought was payable sixty days after the 21st of *July,* 1802; of course, it became payable on the 19th of *September* following. Grace is not allowable in this case. The note was not negotiable. In *Massachusetts,* it has been

decided, that even negotiable notes are not entitled to grace, unless they are expressly made payable with grace. *Per Parsons*, Ch. J. *Jones* v. *Fales*, 4 *Mass. Rep.* 251. The action might have been brought to the *October* term of the City Court, or to the *November* term of the County Court. To the one, or the other, the first suit should have been brought. The rule of law on this subject, is, that the action shall be brought immediately. *Swift's Ev.* 347. The endorsee of a note is bound, at all events, to use due diligence ; and he cannot be permitted to shew, that the endorser has suffered no injury from his negligence. Sound policy, as well as the principles of justice, sanctions this doctrine. *Dennis* v. *Morrice*, 3 *'Esp.* 158.

Further, it is claimed, that both the facts and the law in this case, ought to have been submitted to the consideration of the jury. The law on this point, is, that wherever the facts are so disclosed, that there can be no doubt respecting them, the court will determine the law arising upon the facts. *Tindal* v. *Brown*, 1 *Term Rep.* 167.

SWIFT, J. It appears, that *Raymond*, the maker of the note endorsed by the defendant, had sufficient property within the reach of legal process, to pay the note when it became due : Of course, the warranty of the ability of the maker, contained in the endorsement, was satisfied. This property was attached, and might have been held to respond the judgment, had it not been for some mistake in the return of the writ by the officer, or some accident in the clerk's office, in not receiving it, and entering it in the docket. This is an event against which the endorser did not warrant : Of course, he is not responsible for it.

A new trial, therefore, ought not to be granted.

The other Judges, severally, concurred.

New trial not to be granted.